

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

December 22, 1969

Hon. Ben Ramsey, Chairman
Railroad Commission of Texas
P. O. Drawer EE
Capitol Station
Austin, Texas    78711

Opinion No. M-542

Re:    Whether the provisions of
Article 6053-1, V.C.S., give
the Railroad Commission power
to adopt safety standards and
take other actions as provided
in that statute with respect
to gas and gas pipeline
facilities owned and operated
by incorporated cities, towns,
or villages within  the State
of Texas, and related question.

Dear Mr. Ramsey:

Your recent letter requested the opinion of this office on the
following two questions:

"1.    Do the provisions of the above cited Act give
the Railroad Commission the power to prescribe
or adopt safety standards and take such other
actions as are stated in said Act with respect
to gas and gas pipeline facilities owned and/or
operated by incorporated cities, towns or villages
within the State of Texas.

"2.    If the answer to the proceeding question is
'yes', can the Attorney General on behalf of
the Railroad Commission of Texas impose the
provisions of Paragraph (C) of said Act against
an incorporated city, town or village, violating
such safety standards as may be prescribed or
adopted by this Commission pursuant to said Act."

The provisions of the subject statute relevant to your first
question are contained in Section 1, subparts (A) and (D) from which
we quote as follows:

"(A)  For the purpose of providing state control
over safety standards and practices applicable
to the transportation of gas and all gas pipeline
facilities within the borders of this state to the
maximum degree permissible under the federal
Natural Gas Pipeline Safety Act of 1968, the Rail-
road Commission of Texas is hereby expressly granted
the power to describe or adopt by regulation safety
standards for all such transportation of gas and
gas pipeline facilities which are not subject to
exclusive federal control, ... and to take any
other requisite action in accordance with Sec-
tion 5(a) of the Natural Gas Pipeline Safety Act
of 1968."

"(D)  Nothing in this Article shall be construed
to reduce, limit or impair any power heretofore
vested by law in any incorporated city, town or
village."

The object of statutory construction is to ascertain the legis-
lative intent and, that having been determined, to construe the
statute so as to give effect to the intent and purpose of the Legis-
lature as to the whole and each material part of the statute.  53
Tex.Jur.2d, Statutes, §125, and cases cited therein.  With this in
mind, it is our opinion that Section 1(A) of Article 6053-1, Vernon's
Civil Statutes, in clear and unmistakable language, expresses the
intention and purpose of the Legislature to provide "state control"
... "to the maximum degree permissible under the federal Natural
Gas Pipeline Safety Act of 1968" (49 USCA 1671-1684) by expressly
granting to the Railroad Commission the power to do that which is
necessary under the federal Natural Gas Pipeline Safety Act of 1968,
and especially Section 5(a) thereof, to maintain "state control"
to the "maximum degree permissible".  This "state control" is to
be exercised by the Railroad Commission over the "... safety stan-
dards and practices applicable to the transportation of gas and all
gas pipeline facilities within the borders of this state ... which
are not subject to exclusive federal control...".

The grant of jurisdiction and power to the Railroad Commission
of Texas to act pursuant to the federal Natural Gas Pipeline Safety
Act of 1968 is, in our opinion, comprehensive, and extends to gas
and gas pipeline facilities owned and/or operated by incorporated
cities, towns or villages (exempt from exclusive federal control
pursuant to Section 1(b) of the Natural Gas Act) within the State
of Texas as well as to the power to do the other things specified
in Section 1(A) of Article 6053-1 with respect to such incorporated
cities, towns or villages.

Section 1(D) of Article 6053-1, above quoted, while couched in exclusionary language with respect to incorporated cities, towns and villages, must be read in light of the entire statute and the principle of law announced in Deacon v. City of Euless, 405 S.W.2d 59 (Tex.Sup. 1966). Although the Deacon case involved dissimilar circumstances, we think the principle of law announced therein, that is, that "municipal corporations do not acquire vested rights against the State" (at p. 62), is fully applicable to Section 1(D) and necessitates a departure from the literal language used therein to construe its meaning and purpose. Consequently, when Section 1(D) is read in the context of the entire statute, and in particular Section 1(A) thereof, it is our opinion that Section 1(D) of Article 6053-1 represents a limitation upon the power delegated to the Railroad Commission of Texas with respect to incorporated cities, towns and villages, rather than the exclusion of incorporated cities, towns and villages, from that power so delegated to the Railroad Commission of Texas. Section 1(D) so construed means that, as regards incorporated cities, towns and villages, the Railroad Commission of Texas may do only that which is necessary pursuant to the federal Natural Gas Pipeline Safety Act of 1968 to maintain "state control" over pipeline safety standards to the maximum degree permissible under the federal Natural Gas Pipeline Safety Act of 1968. The jurisdiction and power of the Commission pursuant to Article 6053-1 extends no further nor to any other subject matter. Our construction of Section 1(A) and 1(D) effectuates full and complete meaning to each provision consistent with the Legislature's clear expression of intention and purpose to provide "state control" of safety standards over the transportation of gas and pipeline facilities within the borders of this state. A brief analysis of the federal Natural Gas Pipeline Safety Act of 1968 (Public Law 90-481; 82 Stat. 720) illustrates the context in which Article 6053-1 was passed and re-enforces our conclusion that the grant of power to the Railroad Commission of Texas is comprehensive for the purposes specified therein. First of all, by virtue of the Natural Gas Pipeline Safety Act of 1968, the Federal Government acting through the Secretary of Transportation has preempted, with the exception of one area not important here, the entire field of regulating and enforcing safety standards for all transportation of gas and pipeline facilities. This includes intrastate pipelines as well as gas and distribution facilities within municipalities. See Sections 2(3), 2(4), 5(a), 6(a), 8(a) and 11 of the Natural Gas Pipeline Act of 1968. The second major aspect of the Natural Gas Pipeline Act of 1968 is that Section 5(a) thereof contemplates that a state agency that does exercise regulatory and enforcement jurisdiction over the safety standards and practices of pipeline facilities and transportation of gas (not subject to the jurisdiction of the Federal Power Commission under the Natural Gas Act) may substitute State for Federal enforcement of the safety standards as they apply to gathering, distribution and local transmission lines and facilities by conforming to the requirements of that section.

However, where a state agency cannot or does not exercise regulatory and enforcement jurisdiction over the safety standards and practices, direct federal regulation and enforcement procedures apply. Our construction of Section 1(A), Article 6053-1 clearly places the Railroad Commission in a position to maintain "state control" to the maximum degree permissible. Therefore, we answer your first question in the affirmative.

Having answered your first question in the affirmative, we now turn to a consideration of your second question.

Section 1(C) of Article 6053-1 reads as follows:

> "(C) The Attorney General is authorized, on behalf of the Railroad Commission, to enforce said safety standards by injunction restraining violations thereof (including the restraint of transportation of gas or the operation of a pipeline facility). Any violation of such safety standards shall further be subject to a civil penalty, payable to the State of Texas, in an amount not to exceed $1,000 for each such violation for each day that such violation persists, except that the maximum civil penalty shall not exceed $200,000 for any related series of violations. Any such civil penalty may be compromised by the Attorney General in consideration of the appropriateness of the penalty to the size of the business of the person charged, the gravity of the violation, and the good faith of the person charged in attempting to achieve compliance after notification of violation."

The section is self-explanatory in providing for injunctive powers to be exercised by the Attorney General on behalf of the Railroad Commission to enforce safety standards and in additionally providing for a civil penalty not to exceed $200,000 for any related series of violations of the safety standards. These sanctions are to be applied against a "person", the scope and meaning of that term being defined in Section 2(1) of the Natural Gas Pipeline Safety Act of 1968 and as used therein incorporated into Article 6053-1 by Section 1(B). "Person" is defined as follows:

> "(1) 'Person' means any individual, firm, joint venture, partnership, corporation, association, state, municipality, cooperative association, or joint stock association, and includes any trustee, receiver, assignee, or personal representative thereof;" (Emphasis added.)

In Section 2(6) of the Natural Gas Pipeline Safety Act of 1968, "municipality" is defined to be:

> " ... means a city, county, or any other political subdivision of a state;"

Incorporated cities, towns and villages are, therefore, in our opinion, among that class of subjects which, pursuant to Section 1(c), the Attorney General on behalf of the Railroad Commission may impose the specified sanctions against for violations of the safety standards applicable to the transportation of gas and pipeline facilities. Gas distribution systems and the pipeline facilities owned and/or operated by a municipality (incorporated city, town or village) are thus within the provisions of Section 1(c). We therefore answer your second question in the affirmative.

In summary, the construction that we have given each part of Article 6053-1 harmonizes each section with the others contained therein in a manner that gives full expression to what in our opinion is the legislative intent of the Article, that is, to provide for "state control" over pipeline safety standards "to the maximum degree permissible under the Natural Gas Pipeline Safety Act of 1968."

## SUMMARY

1. The Railroad Commission of Texas has the power, pursuant to Article 6053-1, V.C.S., to prescribe or adopt safety standards for the transportation of gas and gas pipeline facilities where such transportation and gas pipeline facilities are owned and/or operated by an incorporated city, town or village and to take such other actions as are stated in Article 6053-1.

2. The Attorney General is authorized on behalf of the Railroad Commission of Texas to impose the sanctions specified in Section 1(c), Article 6053-1, V.C.S., against incorporated cities, towns or villages violating safety standards prescribed or adopted by the Railroad Commission pertaining to the transportation of gas and pipeline facilities.

Respectfully submitted,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Rex H. White, Jr.
Assistant Attorney General

Hon. Ben Ramsey, page 6 (M-542)

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
Alfred Walker, Co-Chairman
Houghton Brownlee, Jr.
James H. Quick
Roger Tyler
W. O. Shultz

MEADE F. GRIFFIN
Staff Legal Assisstant

NOLA WHITE
First Assistant